**Johnny Ray FISHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1159–91.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 19, 1994.

Donald S. Gandy, J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, David L. Richards, Charles Brandenberg and Roxanne McDonald, Asst. Dist. Atty., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

*OPINION ON STATE'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED*

MALONEY, Judge.

Appellant was convicted of the aggravated offense of delivery of a controlled substance, amphetamine, with an aggregate weight, including adulterants and dilutants, of twenty-eight grams or more. Appellant was sentenced to twenty-five years imprisonment. In an unpublished opinion the Court of Appeals reversed the judgment of the trial court and ordered a judgment of acquittal. *Fisher v. State*, No. 2–89–269–CR slip op. (Tex.App.—Ft. Worth 1991). We refused the State's petition for discretionary review, but subsequently granted its Motion for Rehearing after Petition for Discretionary Review Refused.

The indictment alleged delivery of

a controlled substance, namely: amphetamine of more than twenty-eight grams but less than four hundred grams[.]

At trial a chemist for the Department of Public Safety testified that her analysis of the substance at issue showed that of its total weight of 59.32 grams, only thirty-one percent or 18.38 grams was pure amphetamine. She further testified that the remainder of

the substance consisted of adulterants and dilutants.

The jury was instructed that

[t]he offense is aggravated if the person delivers a controlled substance, namely, amphetamine, and the amount of the controlled substance is, by aggregate weight, including any adulterants and dilutants, twenty-eight grams or more.

Appellant objected to the above instruction on the ground that it included the phrase "adulterants and dilutants" which was not pled in the indictment. The trial court overruled the objection and the instruction was submitted.

Before the Court of Appeals appellant argued that by including the phrase "adulterants and dilutants," the trial court's instruction allowed the jury to convict appellant on a theory not pled in the indictment. Based upon this Court's decisions in *Reeves v. State*, 806 S.W.2d 540 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) and *Farris v. State*, 811 S.W.2d 577 (Tex.Crim.App.1990), the Court of Appeals concluded that when an indictment alleges a specified weight of a controlled substance and does not also specify that the weight includes "adulterants and dilutants" then the State must prove the existence of the controlled substance *in its pure form* in the amount of the weight alleged. *Fisher*, slip op. at 5. The Court of Appeals therefore agreed with appellant that the jury instruction authorized the jury to convict appellant on a theory not supported by the indictment. The Court of Appeals further held that "the evidence is insufficient to convict the appellant on the aggravated offense as alleged in the indictment," reversed the judgment of the trial court and ordered an acquittal. *Id.* at 6.

The State claims that the Court of Appeals erred in measuring sufficiency of the evi-

dence against the indictment rather than the jury instruction, citing *Benson v. State*, 661 S.W.2d 708 (Tex.Crim.App.1982) (opinion on State's second motion for reh'g), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984) and *Boozer v. State*, 717 S.W.2d 608 (Tex.Crim.App.1984). The State concedes that the jury charge should not have included the instruction on adulterants and dilutants, but argues that such instruction amounted to charge error entitling appellant to a new trial, not an acquittal. Appellant maintains that the Court of Appeals correctly measured sufficiency against the indictment.

The State also urges this Court to reexamine and clarify the standard by which sufficiency of the evidence is measured, pointing to inconsistencies in the *Benson/Boozer* line of cases. We granted review to reconsider the standard by which sufficiency of the evidence is measured in cases where the jury instruction allows a conviction on a theory different from that specifically alleged in the indictment and to determine whether the Court of Appeals erred in its sufficiency analysis in this case.[1]

## I.

■ Our notion of reviewing sufficiency of the evidence is inextricably bound with due process principles of notice and opportunity to defend. In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court recognized that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute *the crime with which he is charged.*" (emphasis added). Citing *Winship*, the Supreme Court stated in *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979), that a conviction on a charge not made or not tried is a denial of due process consistent with the broader prin-

---

1. We granted review of the following grounds:
 1. Instead of awarding an acquittal, should the Court of Appeals have remanded for a new trial due to error in the jury instructions?
 2. When the jury instructions allow a conviction on an improperly broad theory of liability, should the sufficiency of the evidence under *Jackson v. Virginia* be measured against the legal theory contained in the instructions actu-

 ally given, against the legal theory that should have been submitted to the jury, or against some other standard?
 3. Did the Court of Appeals err in not addressing whether the evidence was sufficient under the instructions actually given to the jury— instructions which allowed the jury to take into account the weight of adulterants and dilutants?

ciple "that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." Concluding that these principles applied on appeal as well as at trial, the Supreme Court held that "[a]fter *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.[2] It logically follows that the reviewing court's sufficiency analysis must take into account the crime with which the defendant was charged in the indictment.

We accordingly recognized in *Benson v. State,* supra, that there must be a connection between the crime with which a defendant is charged in the indictment and a reviewing court's role in reviewing the sufficiency of the evidence to support a conviction. There, we were asked whether a reviewing court should look to the indictment or the jury charge in determining sufficiency of the evidence to support a conviction. 661 S.W.2d at 713. Discussing the respective roles of the indictment and jury charge, we began with the premise that "the indictment must allege all of the essential elements of the offense." *Id.* The charge must also contain all of the essential elements of the offense and "should correspond with and incorporate the allegations in the indictment." *Id.* We stressed the relationship between the indictment, the proof, and the jury charge, explaining that:

The standard by which sufficiency is measured was established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ... *This standard must be applied to the evidence and to a correct charge that corresponds to the indictment allegations.* The verdict comes from the jury's determination of the evidence in light of the instructions and law given in the charge. The indictment is directed to the defendant for notice and jurisdiction requirements. It is the charge that "convicts."

*Id.* at 715 (emphasis added). We held that "when a charge is correct for the theory of the case presented we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment *as incorporated into the charge.*" *Id.* (emphasis in original).

In *Boozer v. State,* supra, the charge contained an erroneous instruction on the law applicable to accomplice witness testimony. We held that "sufficiency of the evidence is measured by the charge *that was given.*" 717 S.W.2d at 610 (emphasis in original). While the emphasis in *Boozer* was on the charge alone rather than the "indictment as incorporated into the charge" as we emphasized in *Benson,* the issue before the Court in *Boozer* concerned an instruction on accomplice witness testimony, a matter that was not and need not have been pled in the indictment. Accordingly, we do not construe *Boozer* as limiting or modifying *Benson's* holding.

While the basis upon which *Benson* and *Boozer* were decided is not here questioned,[3]

2. Recognizing in *Jackson* that the question raised went to "the basic nature of the constitutional right recognized in *Winship*", the Supreme Court framed the issue presented as follows:
> whether the due process standard recognized in *Winship* constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.

*Jackson,* 443 U.S. at 313–14, 99 S.Ct. at 2786.

3. The State maintains that the basic principle of measuring sufficiency against the jury instruction given is logically sound. While appellant argues that sufficiency should be measured against the indictment, he has not cross-petitioned on those grounds. In addition, the State has called our attention to several United States Supreme Court

cases which indicate that it is a violation of due process for a reviewing court to measure sufficiency of the evidence against a standard different than that passed upon by the trier of fact. *See, e.g., McCormick v. United States,* 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991) (court of appeals improperly upheld conviction on legal and factual grounds not considered by jury, citing among other cases, *Cole v. Arkansas* ); *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979) (to affirm conviction on basis of theory that differed from theory presented in indictment and jury charge is offensive to due process of law, citing *Cole v. Arkansas* ); *Cole v. Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) (state court which affirmed conviction under § 1 of statute, when defendant was charged and convicted under § 2 of statute, violated due process of law).

this Court's construction of subsequent constitutional amendments and legislative action ultimately affects the reasoning underlying those decisions. Therefore, we need to re-examine *Benson* and *Boozer* in light of those constitutional and statutory changes before addressing the State's specific questions about our application of those cases.

■ For over one hundred years Texas courts have held that defects of substance contained in an indictment rendered it "fundamentally defective" and could be raised at any time.[4] *See, e.g., Studer v. State,* 799 S.W.2d 263, 266–67 (Tex.Crim.App.1990); *American Plant Food Corporation v. State,* 508 S.W.2d 598, 603 (Tex.Crim.App.1974); *Williams v. State,* 12 Tex.Ct.App. 398, 401 (1882); *White v. The State,* 1 Tex.Crim.App. 211, 213 (1876); *see generally* George E. Dix, *Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform,* 38 BAYLOR L.REV. 1, 13–24 (1986). The failure of an indictment to allege all of the elements of an offense was considered a fundamental defect, rendering an indictment and thus a conviction based thereon, void. *See, e.g., Gengnagel v. State,* 748 S.W.2d 227, 229 (Tex.Crim.App.1988) (indictment that failed to allege acts constituting recklessness was fundamentally defective); *White,* 1 Tex.

Crim.App. at 214–15 (indictment that failed to allege felonious intent was fatally substantively defective); *see also Ex parte Cannon,* 546 S.W.2d 266, 268 (Tex.Crim.App.1976) (indictment that failed to allege facts to constitute all elements of offense was fundamentally defective, void and subject to attack in application for writ of habeas corpus).

Expressing frustration over the ability of a defendant to raise substantive defects in the indictment for the first time on appeal, the 69th Legislature submitted for approval to the voters an amendment to article V, § 12 of the Texas Constitution which would give the legislature authority to regulate practices and procedures relating to the use of indictments and informations.[5] The proposed amendment was approved by the voters, and the legislature accordingly passed amendments to the Texas Code of Criminal Procedure, all effective December 1, 1985. In *Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990), we construed the amendments to article V, § 12 of the Texas Constitution and to article 1.14 of the Code of Criminal Procedure[6] as providing that defects of substance or form contained in an indictment must be objected to at trial or are waived.[7] A defect of substance includes the omission of a required element or elements of the offense

---

4. A defect of substance was described as "go[ing] to the very sufficiency of the indictment to support the particular conviction based thereon. It is this quality of the sufficiency of the State's pleading as a matter of law to support the conviction that makes the deficiency one of substance." *American Plant Food Corporation v. State,* 508 S.W.2d 598, 603 n. 1 (Tex.Crim.App. 1974). Defects of substance were, and still are, listed in article 27.08 of the Code of Criminal Procedure. A substantively correct indictment prior to the constitutional amendments was, in the language of our recent opinion in *Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993), "an absolute systemic requirement [that could not] be made subject to rules of procedural default because, by definition, they [were] not forfeitable."

5. Article V, section 12(b) as amended provides that:

An indictment is a written instrument presented to a court by the grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging

a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

6. Article 1.14 as amended provides in part:

(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.
Tex.Code Crim.Proc.Ann. art. 1.14(b).

7. The constitutional amendments effectively transformed a substantively correct indictment from what was previously a nonforfeitable systemic requirement into a matter that is implemented only upon request. *Marin,* 851 S.W.2d at 279–80.

charged.[8] Therefore, the failure of an indictment to allege all of the elements of an offense is waived in the absence of an objection thereto. *Id.*

Accordingly, it is now possible under *Studer* for a defendant to be convicted on the basis of an indictment that does not allege all of the elements of the offense. *See, e.g., State v. Oliver,* 808 S.W.2d 492, 493–94 (Tex. Crim.App.1991) (indictment which fails to allege culpable mental state is still "indictment" conferring jurisdiction and defect waived); *Rodriguez v. State,* 799 S.W.2d 301, 302–03 (Tex.Crim.App.1990) (information which fails to allege requisite knowledge nevertheless sufficient to confer jurisdiction and defect waived). This scenario is at odds with our premise in *Benson* which assumed the existence of an indictment that properly alleged all of the elements of the offense. In light of *Studer* the initial question to be resolved in measuring sufficiency of the evidence is whether the indictment alleges all of the elements of an offense.

## II.

■ In the case of an indictment that facially alleges a complete offense, the reviewing court can adhere to the *Benson* principle of measuring sufficiency by looking at "the indictment *as incorporated into the charge."* *Benson,* 661 S.W.2d at 715 (emphasis in original). This is the rule regardless of whether the indictment was facially complete originally or whether it was made facially complete pursuant to a subsequent amendment.

■ However, in the case of an indictment that does *not* facially allege a complete offense, the reviewing court's sufficiency analysis must now take into consideration not only the facially incomplete indictment, but also the controlling penal provision,[9] and the jury instruction. First, the reviewing court must ascertain from the indictment what penal provision the indictment is based upon. At a minimum the indictment must be sufficient to give notice of what offense the State is alleging so that the controlling penal provision can be identified.[10] Next, the reviewing court must compare that penal provision with the jury instruction. The instruction should allege all of the elements of the offense as set forth in the controlling penal provision (including all of the elements alleged in the indictment, and any omitted element in accordance with the controlling penal provision). Once it is established that the jury instruction properly incorporates all of the

8. Some other defects of substance, in addition to a missing element, that were recognized prior to the 1985 amendments included failure to allege date of offense, culpable mental state, victim's name, enhancement allegations, amount of a controlled substance, and manner and means of committing the offense *where it is the manner and means that renders the act criminal. See, e.g., Ex parte Chance,* 601 S.W.2d 356 (Tex.Crim. App.1980) (indictment alleging date of offense that was subsequent to date of indictment fundamentally defective); *Smith v. State,* 573 S.W.2d 546 (Tex.Crim.App.1978) (indictment that alleged stolen property of over $200 would be fundamentally defective as to conviction for theft of over $10,000 but not as to conviction for theft of over $200 but less than $10,000); *Ex parte Spain,* 589 S.W.2d 132 (Tex.Crim.App.1979) (indictment failing to allege culpable mental state fundamentally defective); *Ex parte Lewis,* 544 S.W.2d 430 (Tex.Crim.App.1976) (indictment that did not allege victim's name fundamentally defective); *Saunders v. State,* 528 S.W.2d 843 (Tex.Crim.App.1975) (indictment that failed to allege date offense committed fundamentally defective); *Wilson v. State,* 520 S.W.2d 377 (Tex. Crim.App.1975) (indictment that alleged delivery of controlled substance fatally defective for failure to allege amount of substance delivered so as to reflect punishment involved); *Reeves v. State,* 144 Tex.Crim. 270, 162 S.W.2d 705 (App.1942) (indictment which did not allege manner and means by which defendant contributed to delinquency of minor failed to charge offense).

9. The phrase "controlling penal provision" as used in this opinion refers to penal provisions that may be contained in various statutes or codes defining the substantive crime alleged in the indictment.

10. We assume in this opinion that the indictment alleges enough to identify the offense charged. For example, an indictment might allege only four of five elements of a particular offense. By comparing the allegations in the indictment, albeit incomplete, with various penal code provisions, one should be able to determine which entire offense the State is alleging. *See* George E. Dix, *Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform,* 38 Baylor L.Rev. 1, 43 (1986) (in order to charge "an offense" as required under Article V, § 12 of the Texas Constitution, indictment must at least "make reasonably clear what criminal offense the grand jury intended").

essential elements of the offense as set forth in the controlling penal provision, the reviewing court can proceed to measure sufficiency of the evidence against the instruction given.[11] Cf. Benson, supra; Boozer, supra.

■ We do not mean to suggest that an indictment which fails to specifically charge or set forth all of the essential elements of an offense is constitutionally sound, but only, as we held in Studer, that a defendant must object to substantive defects in order to preserve error.[12] In the case of an indictment that does not facially allege a complete offense and was objected to as substantively defective, the defendant will undoubtedly be entitled to a new trial based upon trial error for potentially any number of issues, including lack of notice for due process purposes.

## III.

With these principles in mind, we now address the State's question as to how sufficiency should be measured "[w]hen the jury

---

11. Presumably, the law as it currently pertains to variances between the indictment and the charge would apply to cases involving variances between the controlling penal provision and the charge, but we need not address those issues in this case. See, e.g., Langston v. State, 855 S.W.2d 718, 721 (Tex.Crim.App.1993) (having pled additional element in charge, State assumes burden of proving it); Fee v. State, 841 S.W.2d 392, 396 (Tex.Crim.App.1992) (where State's burden elevated in charge beyond minimum required by statute, sufficiency nevertheless measured against charge in absence of State's objection at trial to charge); Warren v. State, 810 S.W.2d 202 (Tex.Crim.App.1991) (although charge could have properly alleged appropriation of items in disjunctive, it alleged appropriation in conjunctive; therefore, State required to appropriation of all items alleged); see also Stephens v. State, 717 S.W.2d 338, 341 (Tex.Crim.App.1986) (indicating that when charge includes erroneous or additional allegation to which State objected at trial, and sufficiency turns upon that erroneous instruction, would be treated as trial error); Polk v. State, 749 S.W.2d 813, 815–16 (Tex.Crim.App. 1988) (Benson and Boozer cannot stand for proposition that jury charge may authorize conviction on less evidence than law requires; "[i]t would be anomalous to measure the sufficiency of the evidence against an authorization that reduces the State's burden of proof from that which is minimally required under the law").

12. A defendant may object to a substantive defect by filing an Exception to Form, a motion to quash, or some other motion for appropriate relief. Cf. State v. Lora, 213 Kan. 184, 515 P.2d 1086, 1091–92 (1973) (if defendant had question as to nature of ulterior felony in burglary case that was not made clear in information, he should have requested bill of particulars; failure of information to allege intended felony underlying burglary was waived where defendant on notice per testimony in preliminary hearing); United States v. Mallen, 843 F.2d 1096 (8th Cir.) (although indictment failed to allege that defendant's false statement was made for purpose to procuring loan, defendant had notice of that element by virtue of indictment's reference to defendant's financial statement, together with citation of controlling statute), cert. denied, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); United

States v. Campos–Asencio, 822 F.2d 506, 508 (5th Cir.1987) (failure of indictment which charged illegal re-entry into United States after deportation to specifically allege lack of consent by attorney general was waived where not raised before trial and indictment alleged defendant was in U.S. "unlawfully" and cited controlling statute containing lack of consent requirement); but cf. United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir.) (mere citation of applicable statute does not give defendant notice of nature of offense), 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988). Article 27.09 of the Code of Criminal Procedure provides that a defendant may make an exception to the form of an indictment for its failure to include any requisite prescribed by articles 21.02 and 21.03. Article 21.02 provides in part that the indictment must set forth the offense in plain and intelligible language and article 21.03 provides that "[e]verthing should be stated in an indictment which is necessary to be proved."

We note that although federal rules prevent federal courts from holding that untimely objections to the substance of the indictment are altogether waived, Fed.R.Crim.P. 7(c) (indictment or information "shall be a plain, concise and definite statement of the essential facts constituting the offense charged."); Fed.R.Crim.P. 12(b) (objection that indictment does not show jurisdiction of court or that it "fails to ... charge an offense" need not be raised prior to trial), federal courts have demonstrated a willingness to uphold a substantively defective indictment when there is not a timely objection, by giving it a liberal construction. See, e.g., United States v. Vogt, 910 F.2d 1184, 1201 (4th Cir.1990) (upon post-conviction challenge to sufficiency of indictment, "every intendment is then indulged in support of ... sufficiency"), cert. denied, 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991); Mallen, 843 F.2d at 1102 (indictment challenged for first time after verdict will be construed liberally in favor of sufficiency and there will be no reversal absent prejudice unless indictment "cannot, within reason, be construed to charge a crime"); Campos–Asencio, 822 F.2d at 508 (indictment will be construed liberally where defendant had notice of issue, demonstrates no prejudice and waits for appeal to assert challenge to substance of indictment).

instructions allow a conviction on an improperly broad theory of liability." [13] By "improperly broad theory of liability", the State is referring to a situation where there is a variance between the indictment and the jury instruction such that the instruction seemingly broadens the basis upon which the State can obtain a conviction. The groundwork laid in the previous section is applicable here. We begin by asking whether the indictment facially alleges a complete offense.

 Where the indictment facially alleges a complete offense (either initially or after amendment), the State is bound by the theory alleged in the indictment, as is the reviewing court in its sufficiency analysis. *See Benson,* supra (recognizing connection between crime charged in indictment and sufficiency analysis based on jury instruction). By holding in *Benson* that a reviewing court must compare "the evidence to the indictment *as incorporated into the charge,*" we meant an indictment that has been *properly* incorporated into the instruction. The importance of reviewing the sufficiency of the evidence based upon the indictment as properly incorporated into the instruction is derived from the principles set forth in *Winship* and later in *Jackson.* It would violate due process for a reviewing court to analyze sufficiency based upon an instruction broadening the basis upon which the State could obtain a conviction under a facially valid in-dictment. Therefore, when the indictment facially alleges a complete offense and the instruction broadens the basis upon which the State can obtain a conviction, the reviewing court shall review sufficiency by comparing the evidence to the indictment as properly incorporated into the instruction, disregarding any language contained in the instruction which expands upon the theory set forth in the indictment. [14] *See Reeves,* supra (measure sufficiency against "correct charge that corresponds to the indictment allegations"). The reviewing court may only disregard matters contained in the instruction that would normally have to be pled in the indictment, but were not. For instance, while an instruction on the law of parties might be said to broaden the basis upon which the State can obtain a conviction, that is a matter that need not be pled in the indictment.

 Where the indictment does not facially allege a complete offense (either initially or after amendment), the State may attempt to prove (and the defendant is deemed to be on notice of) any theory of the offense that is consistent with the incomplete indictment and the controlling penal provision examined together. Accordingly, the instruction may broaden the State's theory as set forth in the incomplete indictment so long as the instruction remains consistent with the

---

13. The State also complains of our application of *Benson* and *Boozer* under other scenarios, but those issues are not implicated by the facts presented in this case and are therefore beyond the scope of this opinion.

14. The State complains that our opinions in *Farris* and *Reeves* are inconsistent. We acknowledge inconsistency in some of the statements made in those opinions. However, we note that the result in both of those cases is consistent with our holding today. In *Reeves,* 806 S.W.2d at 541, the indictment alleged that the defendant delivered "more than twenty-eight grams but less than four-hundred grams" of amphetamine, but did not allege "adulterants and dilutants". The evidence showed that the entire substance weighed 29.7 grams and that the substance contained amphetamine; however, the percentage of amphetamine within the substance was not determined. The instruction provided that the weight could be determined by including adulterants and dilutants. Reiterating the principles set forth in *Benson,* we said that sufficiency must be determined by measuring the evidence against "a correct charge that corresponds to the indictment allegations." *Id.* at 543. We concluded, however, that "under either theory" (as set forth in the indictment or the instruction), the evidence was insufficient.

In *Farris,* 811 S.W.2d at 578 n. 1, the indictment alleged that the defendant possessed "more than 400 grams" of amphetamine. We recognized that the instruction authorized the jury to consider adulterants and dilutants in determining the weight. *Id.* at 579. The testimony was that the entire substance weighed 916.83 grams and included amphetamine and adulterants and dilutants. There was no testimony as to what the adulterants and dilutants were. Stating that sufficiency of the evidence should be measured against the jury charge, and based upon our previous holding in *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Crim.App.1988), that adulterants and dilutants are substances added to increase the bulk or quantity of the final product without increasing its activity, we held that the evidence was insufficient. *Id.* at 579–80.

allegations that are contained in the indictment and with the controlling penal provision. The reviewing court measures sufficiency of the evidence against the instruction, eliminating from its consideration any language expanding the State's theory beyond that which would be consistent with the allegations contained in the incomplete indictment and the controlling penal provision examined together.[15]

■ We pause at this point to address the applicability of several United States Supreme Court cases cited in the State's brief for the proposition that because a conviction cannot be upheld on the basis of a theory not passed upon by the jury, sufficiency must be measured against the instruction given. *See, e.g., McCormick v. United States*, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991); *Cole v. Arkansas*; *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Above, we have held that while sufficiency is measured against the jury instruction, the instruction must properly incorporate the indictment (and, where appropriate, portions of the controlling penal provision). If the instruction improperly expands upon the allegations in the indictment (and, where appropriate, portions of the controlling penal provision), the reviewing court should disregard the expansive language. We do not find the Supreme Court cases in conflict with our holding in this regard.

In *Cole*, the petitioners were charged by information with violating § 2 of a particular state provision and the jury was also instructed on § 2 of the provision. However, in reviewing sufficiency of the evidence, the state appellate court upheld the convictions on the basis of § 1 of the provision. The United States Supreme Court granted certiorari to decide whether it violated due process under the Fourteenth Amendment for a reviewing court to affirm a conviction on grounds neither charged in the information nor passed upon by the jury. Noting that "[n]o principle of due process is more clearly established than that notice of the specific charge and a chance to be heard in a trial of

the issues raised by that charge," the Supreme Court held that "to conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case *as it was tried and as the issues were determined in the trial court.*" *Cole*, 333 U.S. at 201–02, 68 S.Ct. at 517 (emphasis added). Due process was violated where the petitioners' convictions were affirmed "as though they had been tried and convicted of a violation of § 1, when in truth they had been tried and convicted only of a single offense under § 2." *Id.* at 202, 68 S.Ct. at 517.

In *Dunn*, during grand jury proceedings the petitioner implicated a fellow inmate, resulting in the fellow inmate's indictment. In a subsequent meeting with the fellow inmate's attorney on September 30th, the petitioner recanted the statements made in the grand jury proceeding. Pursuant to a motion to dismiss the fellow inmate's indictment, a hearing was held on October 21st, at which the petitioner adopted the September 30th statements. Thereafter, the petitioner was indicted for violations of a federal Code provision that prohibits false statements "in any proceedings before or ancillary to any court or grand jury." The indictment alleged that the petitioner's grand jury testimony was inconsistent with statements made on September 30th in a proceeding ancillary to the inmate's prosecution. The jury was also instructed to base its decision on the September 30th statements. The Court of Appeals affirmed the conviction on the ground that the October 21 hearing was an ancillary proceeding. That court acknowledged that the indictment specified the September 30th rather than the October 21st hearing as the ancillary proceeding, but held this discrepancy between the proof at trial and the indictment was not prejudicial. The Supreme Court reversed:

> To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly

---

**15.** Again, the reviewing court may only disregard matters contained in the instruction that would normally have to be pled in the indictment.

established than a defendant's right to be heard on the specific charges of which he is accused. [citations omitted] There is, to be sure, no glaring distinction between the Government's theory at trial and the Tenth Circuit's analysis on appeal. The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement rather than on the September statement itself. But the offense was not so defined, and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.

*Id.* 442 U.S. at 106–07, 99 S.Ct. at 2195. The Court concluded that since the September 30th meeting did not constitute an "ancillary proceeding," the conviction could not stand. *Id.*

The petitioner in *McCormick*, a state legislator, received money from a constituent organization, but did not report receipt of the money as either campaign contributions or income for tax purposes.[16] The petitioner was indicted for violating the Hobbs Act by extorting payments under color of official right and for filing a false income tax return. The petitioner appealed on the ground that the evidence did not support the verdict, claiming that the Act required a showing that the elected official promised action or inaction in exchange for the money. The Court of Appeals held that such a showing was not required where the parties never intended the payments to be legitimate campaign contributions. The Court of Appeals listed seven factors to be considered in determining the parties' intent in this regard, and upon consideration of those factors concluded that the evidence supported a finding that the parties never intended the money to be a campaign contribution. The Supreme Court reversed, noting that the Court of Appeals' analysis did not account for the fact that the

jury was never instructed on the issue of the parties' intent:

> It goes without saying that matters of intent are for the jury to consider. [citation omitted] It is also plain that each of the seven factors that the Court of Appeals thought should be considered in determining the parties' intent present an issue of historical fact. Thus even assuming the Court of Appeals was correct on the law, the conviction should not have been affirmed on that basis but should have been set aside and a new trial ordered. [citations omitted]

*McCormick*, 500 U.S. at 270, 111 S.Ct. at 1815.

The holdings in *Cole* and *Dunn* are similar. Both cases were reversed where the court of appeals measured sufficiency on a theory different from that alleged in the indictment or information, set forth at trial and instructed upon. In both cases the indictment or information was perfectly reflected in the instruction. Based upon due process principles of notice and opportunity to defend, the Supreme Court held that a defendant had a due process right to a review of the offense as he was charged, tried and convicted. Our holding that the reviewing court should disregard language expanding upon the basis for which the State could obtain a conviction beyond that alleged in the indictment (and, where appropriate, the controlling penal provision), is consistent with *Cole* and *Dunn's* holdings that a defendant is entitled to appellate review of the offense that he was charged with and defended against.

*McCormick* is slightly different. The Court of Appeals in that case announced a new rule of law that was not included in the jury instruction. The new rule pertained to the intent of the parties, an issue of fact to be decided by the jury. Since the issue of intent was one for the jury to determine, re-

16. As a member of the West Virginia House of Delegates, the petitioner was an advocate of legislation allowing foreign medical doctors to practice under temporary permits while studying for the state licensing exams. Some of the foreign doctors who had repeatedly taken and failed the state exams formed an organization which urged extension of the time period within which to pass the state exams. As a result of discussions with the doctors' organization, petitioner agreed to sponsor during the 1985 session, legislation which would grant foreign doctors immunity from state licensure by virtue of their years of experience. Petitioner received money from the doctors' organization during his 1984 campaign.

versal and remand for a new trial was appropriate so that the defendant would have the opportunity to have a jury pass upon that issue. We do not in the instant case authorize the affirmance of a conviction on the basis of issues that were proper, but were not passed upon by the jury. Rather, we are authorizing the reviewing court to disregard issues that were *improperly included* in the instruction. Moreover, our holding would not preclude a reversal for instructional error even if the evidence was found sufficient.

### IV.

■■■ We now turn to the facts of the instant case. Following the principles outlined above, we first ask whether the indictment facially alleges a complete offense. The indictment alleged delivery of "a controlled substance, namely: amphetamine of more than twenty-eight grams but less than four hundred grams." There is nothing facially defective about this indictment. Under the Controlled Substances Act applicable to this case, a person commits an offense if he delivers a controlled substance which is defined to include amphetamine. TEX.REV.CIV. STAT.ANN. art. 4476–15 § 4.031(a) (Vernon 1985). Because this indictment facially alleged a complete offense, the State is limited to proving the theory alleged, as is the reviewing court so limited in its sufficiency analysis.

In analyzing sufficiency in this case, we look at the indictment as properly incorporated into the instruction. The allegations made in the indictment in this case were properly incorporated into the instruction, but those allegations were erroneously enlarged by the addition of the "adulterants and dilutants" language. We therefore disregard such enlargements in our sufficiency analysis. While appellant was indicted for delivery of more than 28 grams but less than 400 grams of amphetamine, the evidence showed that only 18.38 grams of the controlled substance at issue was pure amphetamine. We hold the Court of Appeals did not err in concluding that the evidence was insufficient to support appellant's conviction.

### V.

■■■ The State concedes that the instruction should not have included the "adulterants and dilutants" language and that, appellant having objected to the instruction on these grounds, is entitled to a new trial due to instructional error, rather than an acquittal for insufficiency of the evidence. The State suggests that the Court of Appeals should not have conducted a sufficiency review at all, but should have reframed appellant's insufficiency claim as an instructional error problem.

The State cites *Fain v. State*, 725 S.W.2d 200 (Tex.Crim.App.1986), as illustrative of how to properly approach the instructional error vs. insufficiency of the evidence problem. There, the jury instruction did not allege a proper sequence of prior convictions and also required the State to prove an impossibility—that one of the prior convictions became final before the underlying offense was committed. The defendant appealed on the basis of both insufficient evidence and instructional error. Pointing out that none of the parties maintained that the instructions were correct for the theory of the case presented, we concluded the Court of Appeals did not err in holding that the defendant's insufficient evidence claim was really one of instructional error. *Id.* at 202. The State argues that this case should be treated like *Fain*.

■■■ We note initially that *Fain* is an aberration among our opinions on sufficiency of the evidence reviews. In *Fain*, we essentially disregarded the defendant's sufficiency of the evidence claim, addressing instead his instructional error claim as dispositive of the issue. Beginning with *Boozer*, we have consistently held that the reviewing court is compelled to conduct a sufficiency of the evidence review when raised, even where there was an error in the instruction. We expressly overrule *Fain's* holding to the contrary. The State complains of cases where it is the instructional error that renders the evidence insufficient. However, we are not faced here with such a case.[17] Accordingly,

---

**17.** While admittedly the State is the loser in such cases, we emphasize that the ability to avoid

we decline at this juncture to revisit our holdings that sufficiency of the evidence should be measured against the instruction given even in cases where the evidence is rendered insufficient due to instructional error.

In summary, the indictment in this case facially alleged a complete offense; the Court of Appeals properly measured sufficiency of the evidence by considering the allegations contained in the indictment as properly incorporated into the instruction, disregarding the language expanding upon those allegations, finding the evidence insufficient. The judgment of the Court of Appeals is affirmed.

CAMPBELL and MEYERS, JJ., not participating.

### CONCURRING COMMENT ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge, concurring.

Understanding that while an "incomplete" charging instrument may invest a trial court with subject matter jurisdiction over a cause, by failing to object to "incompleteness" an accused does not waive or forfeit the fundamental right to a fair and impartial trial under protections constitutionally guaranteed by due process and due course of law clauses—any implication to the contrary in *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990), notwithstanding—I join the opinion of the Court.

### DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge, dissenting.

Appellant was charged with delivery of amphetamine weighing between 28 and 400 grams. The indictment did not include any language about adulterants and dilutants. However, the jurors were instructed that they could use the weight of adulterants and dilutants in calculating the weight of the controlled substance for which appellant was responsible. Appellant objected to the charge on that ground. On appeal he challenged both the correctness of the jury charge and the sufficiency of the evidence.

Viewed in the light most favorable to the verdict, the evidence at trial is summarized in the following statements. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Undercover police officers purchased a quantity of amphetamine from appellant for $2,000. When buyers like the undercover officer purchase amphetamine from either wholesalers or street-level retailers, it has been cut at least once and often twice to dilute its strength and increase the quantity of the substance. The powder delivered by appellant weighed 59.32 grams, of which 31% (or 18.38 grams) was pure amphetamine. The pure powder had been "cut" with nicotinamide, another name for vitamin B–12; nicotinamide is a common cutting agent. The 59.32 grams was the total weight of the powder including any adulterants, dilutants and the amphetamine.

Relying on this Court's decisions in *Reeves v. State*, 806 S.W.2d 540 (Tex.Cr.App.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991), and *Farris v. State*, 811 S.W.2d 577 (Tex.Cr.App.1990), the Court of Appeals held in an unpublished opinion that the jury charge should have required the State to prove the pure amount of drugs over 28 grams. *Fisher v. State*, No. 02–89–269–CR (Tex.App.—Fort Worth, delivered August 6, 1991). However, rather than reverse for a new trial in light of this error in the charge, the court said it was compelled by

---

these problems rests with the State. We have indicated that if the State properly objects to an error in an instruction which error would ultimately render the evidence insufficient, the reviewing court will treat the issue as one of trial error, rather than sufficiency of the evidence. See *Stephens v. State*, 717 S.W.2d 338, 341 (Tex.Crim.App.1986) (indicating that when instruction includes erroneous or additional allegation to which State objected at trial, and sufficiency turns upon that erroneous instruction, would be treated as trial error). However, in the absence of an objection from the State, the defendant is entitled to rely upon the instruction as properly setting forth the State's theory of the case. *See, e.g., Boozer*, supra; *Fee v. State*, 841 S.W.2d 392, 396 (Tex.Crim.App.1992).

*Reeves* and *Farris* to judge sufficiency against the theory that should have been submitted to the jury—a theory restricted to a pure amount of amphetamine in excess of 28 grams. The court then awarded an acquittal since the pure amphetamine weighed less than that. The Court of Appeals did not address whether the evidence would have been sufficient had the appellate court, like the jury, considered the weight of adulterants and dilutants.

In light of *Reeves,* the jury charge should not have included an instruction on adulterants and dilutants. The defendant was clearly entitled to a new trial since he challenged the instructions on this ground.

However, this error should not cause an acquittal. The evidence was sufficient under the instructions the jury was told to use in deciding the case, and that is the theory to which the sufficiency test of *Jackson v. Virginia,* supra, should be applied. Given the chemist's testimony that the pure drug had been cut with vitamin B–12 and the undercover officer's testimony that amphetamine was usually cut once or twice, often with vitamin B–12, to dilute the strength and increase the quantity of the powder, a rational trier of fact could easily have concluded that there was in excess of 28 grams of pure amphetamine mixed with the adulterants and dilutants.

Since the evidence was in fact sufficient to convict under the charge as submitted, the acquittal is improper. Therefore, I respectfully dissent.

WHITE, J., joins.