ACCEPTED
01-14-00697-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/14/2015 1:58:37 PM
CHRISTOPHER PRINI
CLERK

**NO. 01-14-00697, 698-CR**

**IN THE COURT OF APPEALS**

**FOR THE**

**FIRST DISTRICT OF TEXAS**

**AT HOUSTON**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/14/2015 1:58:37 PM

CHRISTOPHER A. PRINE
Clerk

---

**NO. 1408625, 26**

**IN THE 262ND DISTRICT COURT
OF HARRIS COUNTY, TEXAS**

---

**DAVID SENDEJO**,
APPELLANT

§
§
§
§
§
§
§
§
§
§
§

VS.

**THE STATE OF TEXAS**,
APPELLEE

---

**AMENDED BRIEF FOR APPELLANT**

---

**THOMAS J. LEWIS**
STATE BAR NO. 12308540
1602 WASHINGTON AVE.
HOUSTON, TEXAS 77007
TEL.: (713) 256-6779
FAX: (713) 861-2951
E-MAIL: TJLAW2@COMCAST.NET
ATTORNEY FOR APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested by Appellant.


## IDENTIFICATION OF THE PARTIES

Appellant gives notice, pursuant to TEX.R.APP.P. 38.1, that the following are interested parties in the present appeal:

### Counsel for the State:

**Devon Anderson**, District Attorney of Harris County.

**Jamie Morrison**, Assistant District Attorney at Trial.

**Kelli Johnson**, Assistant District Attorney at Trial.

**Alan Curry**, Assistant District Attorney on Appeal.

### Appellant:

**DAVID SENDEJO**.

### Counsel for Appellant:

**Ricardo Gonzalez**, Attorney at Trial.

**Marco Gonzalez**, Attorney at Trial.

**Thomas J. Lewis,** Attorney on Appeal.

### Trial Judge:

**Hon. Denise Bradley.**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT............................................ i

IDENTIFICATION OF THE PARTIES...............................................i

INDEX OF AUTHORITIES.......................................................iii

STATEMENT OF THE CASE.......................................................1

STATEMENT OF FACTS.........................................................2

ISSUES PRESENTED...........................................................4

SUMMARY OF THE ARGUMENT:

      I. INSUFFICIENT EVIDENCE TO PROVE AGGRAVATED

      ASSAULT....................................................4

      II. DENIAL OF A MISTRIAL FOR VIOLATION OF A MOTION IN

      LIMINE.....................................................5

ARGUMENT:

I. INSUFFICIENT EVIDENCE

      A. ELEMENTS OF THE OFFENSE AND REVIEW STANDARD...............5

      B. WAS THE VERDICT RATIONAL IN LIGHT OF THE EVIDENCE?......7

II. DENIAL OF A MISTRIAL FOR LIMINE VIOLATION

      A. REVIEW STANDARD.........................................10

      B. PREJUDICE TO APPELLANT..................................11

PRAYER FOR RELIEF.........................................................13

CERTIFICATE OF SERVICE....................................................14

CERTIFICATE OF WORD COUNT....................................................................14

# INDEX OF AUTHORITIES

**CASES**

Alvarado v. State, 912 S.W.2d 199 (Tex.Crim.App. 1995)..........................7

Archie v. State, 221 S.W.3d 695 (Tex.Crim.App. 2007)......................10, 12

Austin v. State, 222 S.W.3d 801 (Tex.App.–Houston[14th Dist.] 2007, pet.ref'd)......................................................................................12,13

Duren v. State, 87 S.W.3d 719 (Tex.App.– Texarkana 2002)...................12

Fisher v. State, 887 S.W.2d 49 (Tex.Crim.App. 1994)(op. on rehearing).............................................................................................6

Fuller v. State, 73 S.W.3d 250 (Tex.Crim.App. 2002)...............................9

Gardner v. State, 306 S.W.3d 247 (Tex.Crim.App. 2009).........................12

Hawkins v. State, 135 S.W.3d 72 (Tex.Crim.App. 2004).........................12

Hudson v. State, 179 S.W.3d 731 (Tex.App.–Houston[14th Dist.] 2005, no pet.).................................................................................................10

Jackson v. Virginia, 443 U.S.307, 99 S.Ct.2781, 61 L.Ed.2d 560 (1979).....6

Johnson v. State, 176 S.W.3d 74 (Tex.App.–Houston[1st Dist.]2004, pet.ref'd)..............................................................................................8

Kemp v. State, 846 S.W.2d 289 (Tex.Crim.App. 1992)...........................11

Ladd v. State, 3 S.W.3d 547 (Tex.Crim.App. 1999)................................11

Mason v. State, 905 S.W.2d 570 (Tex.Crim.App.1995), cert.denied. 516 U.S.1051, 116 S.Ct.717, 133 L.Ed.2d 270 (1996)..................................6

Roberson v. State, 163 S.W.3d 156 (Tex.App.–Austin, 2000, pet.ref'd)......7

Saxton v. State, 804 S.W.2d 910 (Tex.Crim.App. 1991)...........................7

Wead v State, 120 S.W.3d 126 (Tex.Crim.App. 2004)............................10

**STATUTES**

T<small>EX</small>.P<small>ENAL</small> C<small>ODE</small>:

Art.  22.01(a)........................................................................................6

Art.  22.02(a)........................................................................................5

**RULES**

T<small>EX</small>.R.A<small>PP</small>.P:

Rule 25.2............................................................................................1

Rule 38.1.............................................................................................i

Rule 44.2(a)........................................................................................9

**TO THE HONORABLE COURT OF APPEALS:**

Comes now DAVID SENDEJO, Appellant, and submits this Brief pursuant to Rule 25.2 of the Texas Rules of Appellate Procedure in support of his request to set aside the conviction in Cause No. 1408625 and 1408626 and for a new trial therein.

## STATEMENT OF THE CASE

Appellant was charged by indictment in Cause No. 1408625 with the aggravated assault of Aaron Franco by shooting him with a firearm and causing bodily injury; the offense was allegedly committed on July 30, 2013. (Clerk's Record, Case I, 8). The indictment included an enhancement paragraph alleging a prior felony conviction. (Id.). In Cause No. 1408626, Appellant was charged with the aggravated assault of Angel Franco allegedly committed on July 30, 2014; there was an enhancement paragraph. (Clerk's Record, Case II, 9).

Appellant entered a plea of not guilty in both cases and a jury was empanelled to try them together. (Clerk's Record, I, 438; II, 449). The jury returned a verdict of guilty. (Id., I, 454; II, 466). After hearing evidence on punishment, the court found it true that Appellant had been previously convicted of a felony, and sentenced Appellant to a concurrent term of 65 years in the Institutional Division of the Texas Department of Criminal Justice. (Id.). Appellant gave timely notice of appeal and the Court appointed the undersigned as attorney on appeal. (Id., I, 457-8; II, 469-471). The Court

certified Appellant's right to appeal. (Id.).

<h1 style="text-align:center"><u>STATEMENT OF FACTS</u></h1>

Aaron Franco spent the evening of July 30, 2012, at home with his son Marcellino Franco and his grandson Angel Franco. Aaron Franco (Aaron) lived in a small ten-unit apartment complex where most of the residents knew each other. (Reporter's Record, III, 18). The complex has 5 apartments downstairs and 5 upstairs. In front of the complex there is an open space with a house beyond the open area. (Id., 30-31). Aaron lived in apartment # 3 on the ground floor. (Id., 36).

Around midnight Aaron Franco heard a knock on the door. Aaron opened the door and saw a person he knew as "David"or "Big Dave."(Id., 19). Aaron recognized him as someone who had often been hanging around the complex over the last 6 months, and identified Appellant in court. Prior to the shooting, Aaron knew Appellant by sight but was not friends with him. (Id.,19-20, 29).

Appellant seemed agitated. He told Aaron he was looking for a black man with a backpack. Aaron said to try Apartment #4. (Id., 20). Appellant returned and said "Why did you lie to me?" Fearing trouble, Aaron closed the door and turned on his porchlight. Seconds later he heard the sound of his porchlight being struck. He opened his door and found the light fixture on the ground and the bulb out, leaving the outside in darkness. (Id., 32-33). Aaron asked Appellant why he knocked out the light. After an angry confrontation, Aaron closed the door again. (Id., 22-23). Aaron did not see Appellant with a

gun. (Id., 34).

Minutes later. Appellant came back. Aaron opened the door halfway and told Appellant to go home. Appellant wanted to talk and tried to push the door open. Aaron managed to close the door on him. (Id., 24). Angel Franco (Angel) got up and helped his grandfather hold and lock the door. At this point a shot came through the door. It hit Angel's finger, then ricocheted through Aaron's arm and groin. (Id., 25-26). The gunshot broke Aaron's armbone, requiring reconstructive surgery. The bullet then passed through his colon, part of which had to be removed. Since the shooting, Aaron has had to wear a colostomy bag. (Id., 27). On the night of the shooting, Aaron did not see a gun in Appellant's possession. (Id., 29).

Angel Franco was 16 at the time of the shooting. He was watching TV with his grandfather Aaron and his uncle Marcellino. Around midnight he heard a knock on the door and saw a person he knew as "Big Dave," identified as Appellant. (Id., 37-38). Appellant seemed agitated, and returned twice to the Francos' door. He appeared a final time and tried to push his way in. (Id., 41-42). Angel got up and was helping his grandfather close the door when there was a gunshot. (Id., 42-43). The bullet shattered the bone in Angel's index finger. (Id., 45). Like his grandfather, Angel did not see Appellant wih a gun that night. (Id., 43). The door was a solid wooden door and Angel could not have seen what was happening outside it. (Id., 47).

Ricardo Salas, the Houston police officer who responded to the 911 call,

did not arrive at the apartment until after both Aaron and Angel Franco had been taken to the hospital. (Id., 51-56.) He noted that in the front door there was a waist-high bullet hole (Id., 57); it appeared that the bullet had come from outside. (Id., 67). He recovered a single shell casing from outside the apartment. (Id., 59). However, Salas did not find a gun at the scene. (Id., 68). John Johnston, a police investigator, interviewed Aaron Franco in the hospital. In developing Appellant as the suspect, Johnston did not show him a photo array until the very end of his investigation. (Id., 72-74). Johnston did show a photospread to other residents of the complex who identified Appellant. (ID., 76-78). Johnston visited the complex twice, but not at night. (Id., 85-86). He noted the open area in front of the complex, but never determined who lived in the house next door. (Id., 86-89).

## ISSUES PRESENTED

A) The evidence was insufficient to prove beyond a reasonable doubt that Appellant committed aggravated assault by shooting Aaron Franco and Angel Franco with a firearm.

B) The court erred in denying a mistrial for the violation of Appellant's motion in limine.

## SUMMARY OF THE ARGUMENT

A) The complainants testified that they did not see Appellant with a gun on the night of the shooting. They saw no gun even though he came to their door repeatedly and his behavior became increasingly threatening. No gun

was ever found. No evidence was admitted that Appellant had ever been seen with a gun on any other occasion. The police investigation was conclusory in that they had the Francos identify Appellant from a single photo instead of a photo array. The police made no effort to exclude any source of the gunshot other than Appellant. Without further proof, a rational jury should not have found Appellant guilty beyond a reasonable doubt.

B) The court granted Appellant's motion in limine to bar the State from offering evidence that Appellant had been seen carrying a gun on other occasions. The court instructed the jury to disregard Angel Franco's testimony that he had in fact seen Appellant with a gun before. The court did not grant a mistrial even though the statement was deeply prejudicial to Appellant and was not cumulative of other evidence of his guilt.

## ARGUMENT

## I. INSUFFICIENT EVIDENCE TO PROVE AGGRAVATED ASSAULT

### A. ELEMENTS OF THE OFFENSE AND REVIEW STANDARD

The offense of aggravated assault causing bodily injury by shooting with a firearm is defined as follows:

TEX.PENAL CODE §22.02(a):

A person commits an offense if the person commits assault as defined in Section 22.01 and the person:
(1) causes serious bodily injury...;
(2) uses or exhibits a deadly weapon during the commission of the assault.

**TEX.PENAL CODE** §22.01(a):
A person commits an offense if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury...;
(2) intentionally or knowingly threatens another with imminent bodily injury ....

The evidence left no doubt that Aaron Franco and Angel Franco suffered serious bodily injury inflicted by a deadly weapon. The testimony established that the injury to the Francos followed a confrontation with Appellant. Left unresolved is the question of whether the evidence was sufficient to prove Appellant had a gun and fired the shot that hit the Francos.

The Court of Criminal Appeals has overruled its line of cases affording factual-sufficiency review and held that legal-sufficiency analysis is the only standard a reviewing court may apply. Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App.2010). Hence the trial court's ruling on Appellant's instructed-verdict motion should be reviewed by looking at the relevant evidence in the light most favorable to the verdict and determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Mason v. State, 905 S.W.2d 570, 574 (Tex.Crim.App. 1995), cert.denied, 516 U.S. 1051, 116 S.Ct.717, 133 L.Ed.2d 270 (1996).

A legal sufficiency analysis begins by examining the indictment as incorporated in the court's charge to the jury. Fisher v. State, 887 S.W.2d 49, 53 (Tex.Crim.App. 1994)(op. on rehearing). In the present case, the trial court

charged the jury on aggravated assault in relevant part as follows:

> [I]f you find from the evidence beyond a reasonable doubt that … the defendant, DAVID SENDEJO … did then and there unlawfully, intentionally, or knowingly cause bodily injury to Aaron Franco, by shooting Aaron Franco with a firearm, and the defendant used or exhibited a deadly weapon, namely, a firearm, then you will find the defendant guilty of aggravated assault. (Cause No. 1408625, Clerk's Record, 447-48.)

In Angel Franco's case, Cause No. 1408626, the court charged the jury using the same language. (Clerk's Record, 458-59).

Hence, the jury was charged to convict Appellant only if the evidence showed beyond a reasonable doubt that he was the person who fired a gun through the apartment door and hit Aaron and Angel Franco. Appellant's legal-sufficiency challenge admittedly faces a difficult review standard. The jury is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses. Alvarado v. State, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995), and may accept or reject evidence offered by either the State or the defense. Saxton v. State, 804 S.W.2d 910-914 (Tex.Crim.App. 1991). However, a jury verdict is not totally beyond scrutiny. While a reviewing court may not play the role of a thirteenth juror, it must act as a procedural safeguard to insure that the fact finder's verdict was rational. Roberson v. State, 16 S.W.3d 156, 164-165 (Tex.App.– Austin 2000, pet.ref'd).

## B. WAS THE VERDICT RATIONAL IN LIGHT OF THE EVIDENCE?

The State must prove beyond a reasonable doubt that the accused is the person who committed the crime. Roberson, 16 S.W.3d at 167.  Identity is in

fact an element of the offense which the State must prove. Johnson v. State, 176 S.W.3d 74, 78 (Tex.App.–Houston [1st Dist.] 2004, pet.ref'd). At first glance, identity seems to have been established by the Francos' testimony that the gunshot took place immediately after the confrontations with Appellant. However, a close review of the evidence suggests that a reasonable doubt remains that Appellant fired the shot.

Both Aaron Franco and Angel Franco testified that they did not see Appellant with a gun on the night of the shooting. (Id., III, 29, 43). They saw no gun even though the Francos had several opportunities to view him during his repeated appearances at the door. (Id., 34). They testified that at each appearance he became progressively more belligerent. (Id., 20, 22-24, 41). Their description of Appellant's demeanor the last time he came to the door suggests that by that point he had become positively threatening. (Id., 22-23, 41-42). Nevertheless the Francos did not see him display or brandish a gun. When the shot was fired the door was closed. The door was solid and they could not see though it. (Id., 47).

When the first responders arrived on the scene, Appellant was not there. (Id., 56). The police officer found a shell casing outside the apartment but could not say more precisely where the shooter had been when the shot was fired. (Id., 58-59). No gun was ever recovered. (Id., 61). Admittedly, Appellant had a motive and an opportunity to fire the shot. However, there are other possible explanations for the source of the gunshot. There was an open

space in front of the Francos' apartment. (Reporter's Record, V, State's Exhibit 3). Across the open space there was a blue house. (Id., State's Exhibit 2). Aaron Franco testified that they did not know the occupants of the blue house, but several cars were usually parked at the house. (Reporter's Record, III, 30-31). The police never investigated who lived at the blue house or whether anyone who frequented that location might have had a motive to fire a shot in the direction of the Francos' apartment. (Id., 86-89). Aside from an inadmissible comment by Angel Franco, discussed at length below, the State's evidence that Appellant was the shooter depended on inferences and unanswered questions.

An appellant who "claims the evidence is insufficient to prove the elements of the offense... is asserting his federal constitutional due process rights. Such claims are reviewed by measuring evidentiary sufficiency against 'the substantive elements of the criminal offense as defined by state law." Duren v. State, 87 S.W.3d 719 (Tex.App. - Texarkana, 2002, citing Fuller v. State, 73 S.W.3d 250, 252 (Tex.Crim.App. 2002). Appellant's claim of legal insufficiency of the evidence is therefore to be measured by constitutional standards. Rule 44.2(a), TEX.RULES APP.PRO., requires reversal unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Due to the insufficient evidence that Appellant fired the shot that caused serious bodily injury to Aaron Franco and Angel Franco, Appellant's conviction should be reversed.

# I. DENIAL OF MISTRIAL FOR LIMINE VIOLATION

## A. LIMINE VIOLATION AND REVIEW STANDARD

Prior to trial, the State gave notice to Appellant of its intent to call witnesses to testify that they had seen him with a gun prior to the evening of the alleged assault. (Reporter's Record, III, 5-7).  Appellant made a motion in limine to exclude the testimony on the ground that it was more prejudicial than probative that he was carrying a gun at the time of the alleged assault. (Id.). The court granted the motion in limine. (Id., 7).

On direct examination, the prosecutor asked Angel Franco, "How do you know the defendant is the one that shot you?" He answered, "Everyone has always seen him with that gun that he's had." (Id., 43).  The court granted Appellant's objection and also instructed the jury to disregard Angel Franco's statement. (Id.).  Appellant moved for a mistrial which was denied. (Id., 44). However, the court reiterated that the motion in limine had been granted and instructed the prosecutor not to ask any witness if Appellant had been seen with a gun prior to the shooting. (Id., 46, 49).

A trial court's ruling on a motion for mistrial is reviewed on an abuse of discretion standard. Archie v. State, 221 S.W.3d 695, 699 (Tex.Crim.App. 2007); Hudson v. State, 179 S.W.3d 731, 738 (Tex.App.–Houston[14th Dist.] 2005, no pet.).  To establish an abuse of discretion, the trial court's ruling must fall outside the zone of reasonable disagreement. Wead v. State, 120 S.W.3d 126, 129 (Tex.Crim.App. 2004). Denial of a mistrial falls outside the

zone of reasonable disagreement when the defendant has suffered prejudice that cannot be cured by a jury instruction. Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999).

## B. LIMINE VIOLATION AND PREJUDICE TO APPELLANT

In order to convict appellant of aggravated assault, the State had to prove beyond a reasonable doubt that Appellant fired the shot that injured the Francos. Both Aaron and Angel testified that they had not seen Appellant with a gun on the night of the shooting. (Reporter's Record, III, 29, 43). The State did not call Connie Guerrero, the proposed witness who could testify to prior incidents of Appellant carrying a gun. (Id., 7). Aside from Angel Franco's response to the State's question "how do you know who shot you," there was no direct evidence to show that Appellant ever carried a gun. Hence the State's case against Appellant rested on an inference that Appellant must have fired the shot because he had been involved in a confrontation with Aaron Franco. Had testimony been admitted that Appellant carried a gun on many other occasions, the inference would have been strengthened considerably.

Testimony regarding extraneous conduct can be rendered harmless by a jury instruction unless the substance of the testimony suggests that it made an impression that the jury would be unable to disregard. Kemp v. State, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992). Whether this standard has been met depends on the particular facts of each case. Ladd, 3 S.W.3d at 567. Angel Franco's statement was particularly harmful to Appellant. It provided the

otherwise missing link to establish that Appellant had a history of carrying a firearm, neutralizing the Francos' testimony that they had not seen him with a gun on the night of the shooting. Hence the violation of Appellant's motion in limine caused him serious harm by undermining any reasonable doubt that he fired the shot.

In determining whether the trial court abused its discretion, a reviewing court must examine much the same factors that would be considered in a harm analysis. Archie, 221 S.W.3d at 700. These include 1) the prejudicial effect; 2) the curative measures taken by the trial court; and 3) the likelihood of conviction in the absence of the prejudicial event. Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). In Appellant's case the first and third factors tell in favor of a finding of prejudicial harm.

A detailed analysis of how curative measures may counter a limine violation in Austin v. State, 222 S.W.3d 801 (Tex.App.–Houston[14th Dist.] 2007, pet.ref'd). In Austin, the defendant was charged with injury to her own child. The trial court granted a motion in limine barring testimony that another of her children had died under suspicious circumstances. Id. at 813. After a witness violated the motion, the court instructed the jury in detail that the testimony should "never have been brought out before the jury" and admonished them in the strongest terms not to consider it. The court further instructed the jury to do "soul searching" over a recess and polled them individually to make a record that they all felt able to comply. Id. at 813-815.

-12-

The court concluded that the limine violation was deeply prejudicial. However, in view of the court's curative measures, as well as the strength of the other evidence of the defendant's guilt, the trial court's denial of a mistrial was reasonable. Id. at 816.

Appellant's case can be clearly distinguished from Austin. In Austin, the limine violation was merely cumulative of other evidence of the defendant's guilt, which this court described as "egregious." Id. at 816. In Appellant's case, other than the limine violation there was no direct testimony that Appellant had ever been seen carrying a gun. Hence the violation went to the core issue of proving his guilt. Moreover, the curative measures taken in Appellant's case were far less aggressive than those taken by the trial court in Austin. Hence the record suggests that the first and third factors of Hawkins support a finding that Appellant suffered enough prejudicial harm that a mistrial should have been granted.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Court to consider each and every point of error raised herein, to reverse Appellant's conviction and remand for a new trial, or fashion a remedy consistent with justice and the law.

Respectfully submitted,

_____

Thomas J. Lewis
1602 Washington Ave.
Houston, TX 77007
State Bar No. 12308540
Phone: (713) 256-6779
Fax:    (713) 861-2951
E-Mail: tjlaw2@comcast.net
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true copy of the foregoing appellate brief was served on this the 13th day of January, 2015, on Alan Curry, State's Appellate Counsel, by e-mail delivery, and on Appellant by mailing the same.

_____

Thomas J. Lewis

## CERTIFICATE OF WORD COUNT

I, the undersigned attorney, hereby certify that this document contains a total of 3836 words as shown by the word count utility of the word

processor used to prepare this document.

                                                _____

                                                Thomas J. Lewis