TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00102-CR


NO. 03-96-00103-CR






Michael Anthony Piselli, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NOS. 7771 & 7772, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING







A jury found appellant Michael Anthony Piselli guilty of aggravated kidnapping and
aggravated assault. Tex. Penal Code Ann. §§ 20.04, 22.02 (West 1994 & Supp. 1998). (1) The jury
assessed punishment for these offenses at imprisonment for fifty years and ten years respectively. We will
affirm.


Background.

Brittney McAllister lived in Killeen with her daughter, Shelby Mohundro, who was fourteen
months old at the time of the offenses. McAllister worked in Oakalla as a baby-sitter and housekeeper for
Steven Worth. McAllister and appellant had a romantic relationship which, according to McAllister, ended
in October 1994.

Between 4:00 and 5:00 a.m. on January 16, 1995, McAllister was awakened in her
apartment when appellant entered her bedroom armed with a shotgun. Appellant ordered McAllister's
new boyfriend, Michael Sexton, to leave the apartment. Appellant struck and kicked McAllister several
times, then asked her if Sexton was going to call the police. When McAllister said he was, appellant left
the apartment. Later that morning, McAllister and Sexton went to the Killeen police station to give
statements. When they returned to the apartment, they found that "[e]verything was overturned and
broken." They called the police and reported what had happened. That afternoon, appellant called
McAllister and told her he would kill her if she pressed charges against him.

The next morning, January 17, 1995, McAllister and Shelby drove to Worth's house in
Oakalla. At about 11:00 a.m., while they were alone in the house, appellant pounded on the door and
called McAllister's name. McAllister went outside to talk to appellant, taking Shelby with her. Appellant
again demanded that McAllister not press charges against him for the incident the day before. McAllister
"made a smartaleck remark." Appellant attacked her with his fists, then began to twist her neck with his
forearm. The two fell to the ground near the spot where McAllister had placed Shelby. The child began
to cry. Appellant said, "I'm going to take your kid," picked up Shelby, and ran toward his car. McAllister
fled into the house and unsuccessfully attempted to call 911. She then left the house through a rear window
and ran to a neighbor's house. As she ran, she heard gunshots. It was later determined that appellant had
fired three shots through the front door with a .12 gauge shotgun. A fourth shotgun blast penetrated the
front fender of McAllister's car.

McAllister ran to the home of Shirley Ichard. Ichard testified that McAllister appeared at
her door shaking, crying, and covered with blood. McAllister told Ichard that a man was trying to kill her
and her baby. Ichard hid McAllister in a closet, then ran to the Worth house to find Shelby. When she
got there, both the house and the yard were deserted. Ichard returned to her house, called the police, and
attempted to calm McAllister.

Local and state police searched for appellant and Shelby throughout the day. They were
sighted at various locations in Mills, Lampasas, and Burnet Counties. On at least one occasion, appellant
drove in excess of one hundred miles-per-hour in an effort to avoid capture. Finally, at about 6:30 p.m.,
appellant drove into a pasture in rural Mills County where his automobile was disabled and surrounded by
police. Appellant got out of his car, pointing his pistol-grip shotgun toward Shelby as he did so. Texas
Ranger Fred Cummings testified that appellant was screaming "as loud as you can scream" and "threatening
to kill the baby, to kill the police, to kill himself." A standoff ensued, during which local police, Texas
Rangers, and agents of the Federal Bureau of Investigation attempted to negotiate appellant's surrender. 
Lampasas County Sheriff Gordon Morris testified, "At no time [during the standoff] did I ever see him
without the barrel of the gun pointed . . . at the baby's head. Sometimes at the baby's ear but most of the
time it was underneath the chin of the child." Appellant put down his weapon and surrendered at 12:45
a.m. that night. The child was not seriously injured.

Appellant testified that he and McAllister were engaged to be married. Appellant testified
that when he entered the apartment he shared with McAllister during the early morning hours of January
16, he was surprised to find her in bed with another man. Appellant began removing his property from the
apartment, including his shotgun. He denied hitting McAllister or threatening anyone with the shotgun. He
also denied vandalizing the apartment. Appellant testified that he went to the Worth residence in Oakalla
the next day to talk to McAllister. They argued and she slapped him. She then went inside the house,
telling appellant, "[M]y blood is going to be on your hands." Appellant testified that McAllister had
attempted suicide on other occasions and he feared that she was going to take her life. Finding the door
locked, appellant shot the lock with his shotgun. The house was empty. Appellant took Shelby, intending
to deliver her to her father in Temple later that day. Appellant testified that he fled from the police because
he feared being arrested. He said he behaved as he did in the pasture because the officers threatened to
kill him. Appellant denied pointing the shotgun at the child.

Based on his actions on January 17, 1995, the jury found appellant guilty of abducting
Shelby Mohundro with the intent either to inflict bodily injury on her or to terrorize Brittney McAllister. See
Penal Code § 20.04(a)(4), (5). The jury also found appellant guilty of threatening McAllister with imminent
bodily injury by use of a deadly weapon. See Penal Code § 22.02(a)(2). Appellant does not challenge
the sufficiency of the evidence. 


Extraneous offenses.

Appellant contends the district court erred by admitting the testimony concerning his armed
entry into McAllister's apartment on the morning of January 16 and about the "trashing" of the apartment
later that morning. The court ruled that this testimony was admissible as same transaction contextual
evidence. See Rogers v. State, 853 S.W.2d 29 (Tex. Crim. App. 1993). Appellant assails this ruling,
arguing that the January 16 offenses were independent of the January 17 offenses, that he was not shown
to be responsible for the vandalism at the apartment, and that the probative value of the evidence was
outweighed by the danger of unfair prejudice. Tex. R. Crim. Evid. 403.

Evidence of other offenses connected to the charged offense, now called same transaction
contextual evidence, is relevant and admissible pursuant to Texas Rule of Evidence 404(b) if the charged
offense and the contextual evidence are so interconnected that a full understanding of the former requires
proof of the latter. Rogers, 853 S.W.2d at 33. The application of this principle is clearly illustrated by this
cause. McAllister testified that appellant came to the Worth house hoping to convince her, by threats of
violence, not to prosecute him for his conduct the previous day. The events of January 16 gave context
to appellant's behavior on January 17, and knowledge of this context was necessary for the jury's full
understanding of the charged offenses. The district court did not abuse its discretion by admitting the
challenged testimony pursuant to rule 404(b). Given the necessity for the testimony, the court also did not
abuse its discretion by overruling appellant's rule 403 objection. See Montgomery v. State, 810 S.W.2d
372, 392-93 (Tex. Crim. App. 1991) (opinion on rehearing). Although there was no direct evidence that
appellant vandalized the apartment on January 16, McAllister testified she told appellant that she would not
press charges for the vandalism if he would pay her for the damages he caused. We believe the
circumstantial evidence is sufficient to prove appellant's commission of the extraneous misconduct. Point
of error three is overruled.

By point of error four, appellant contends a mistrial should have been granted when the
State adduced evidence of extraneous misconduct of which he had not been given the required advance
notice. See Neuman v. State, 951 S.W.2d 538 (Tex. App.--Austin 1997, no pet.); Tex. R. App. P.
404(b). During redirect examination, McAllister read the following passage from a written statement she
gave the police: "He [appellant] always talked about getting into a shoot-out with the police. And he said
that he wanted to kill a bunch of people first. The reason he bought the gun was that he was going to be
permanently kicked out of the Army and he said that if that happened, he was going to kill his chain of
command on Fort Hood." Appellant objected on various grounds that did not include lack of notice, the
objection was sustained, and the jury was instructed to disregard the testimony.

We overrule this point of error for two reasons. First, appellant's contention that he was
not given the notice required by rule 404(b) was not preserved by timely objection at trial. Tex. R. App.
P. 33.1(a)(1)(A). Second, any error was cured by the court's prompt instruction to disregard. See Kelley
v. State, 677 S.W.2d 34, 36 (Tex. Crim. App. 1984). Point of error four is overruled.


Medical records.

Prior to trial, appellant issued subpoenas for two sets of medical records relating to Brittney
McAllister's psychiatric treatment. One of these records was from an April 1994 emergency hospital
admission following what is described as a "suicidal gesture." The report reflects that McAllister had
inflicted superficial cuts on her wrists, but denied attempting to kill herself. The other medical record was
from the Central Counties Center for MHMR Services. It reflected that McAllister had sought help from
the agency for her self-abusive behavior. The records were delivered to the district court for in camera
inspection. It was agreed that the court would release the records when and if they became relevant during
trial.

Defense counsel asked to examine the records during McAllister's cross-examination. This
request was denied on the ground that the matters contained in the documents were collateral and did not
constitute proper impeachment evidence. The court changed its ruling after appellant testified. At that time,
the court gave the records to the parties to examine over the weekend break. When trial resumed,
McAllister was recalled and cross-examined with the records. The records, with certain portions redacted,
also were introduced in evidence as defense exhibits. In two points of error, appellant contends that the
court (1) denied him his right to effective cross-examination under Texas Rule of Criminal Evidence 610
and (2) violated his constitutional privilege against self-incrimination. U.S. Const. amend. V.

Rule 610(b) permits cross-examination on any issue in the case, including credibility, but
must be read together with the other rules of evidence. Rule 608(b) provides that specific instances of
conduct by a witness may not be inquired into on cross-examination or proved by extrinsic evidence for
the purpose of attacking the witness's credibility. Tex. R. Crim. Evid. 608(b); see Gonzales v. State, 929
S.W.2d 546, 549 (Tex. App.--Austin 1996, pet. ref'd). Moreover, a party cannot cross-examine a
witness on a collateral matter and then contradict the witness. Drone v. State, 906 S.W.2d 608, 615
(Tex. App.--Austin 1995, pet. ref'd). The district court relied on these evidentiary principles in denying
access to the medical reports during McAllister's initial cross-examination. Appellant does not contend,
much less demonstrate, that these rulings were erroneous when made. In any event, appellant was
ultimately permitted to recall McAllister and cross-examine her with the reports. Under the circumstances,
no violation of rule 610(b) is shown.

Appellant also argues under this point of error that the district court violated rule 509, which
provides that there is no physician-patient privilege in criminal proceedings. Tex. R. Crim. Evid. 509. 
Appellant does not refer us to any place in the record where such a privilege was invoked. The court's
denial of appellant's initial requests for the medical records was based on its determination that the records
were irrelevant and inadmissible, not that they were privileged. Point of error one is overruled.

Next, appellant urges that the district court violated his Fifth Amendment privilege by
refusing to release the medical records unless appellant testified. He asserts that the court's rulings "forced
him to testify" and argues, "[T]he records were made available as soon as Appellant testified, showing that
Appellant's attorney had no other choice at that time but to put his client on the stand." When appellant
raised this contention during trial, the district court stated for the record that its rulings were based solely
on its belief that appellant was improperly attempting to impeach McAllister on a collateral matter. The
court denied the suggestion that it sought to coerce appellant into testifying. Although the district court did
permit appellant to examine and use the medical records after he testified, the court based this ruling on its
determination that appellant's testimony raised an issue to which the records were relevant and admissible. 
That a defendant must testify to raise a defensive issue does not, in itself, render his testimony involuntary
or otherwise violate the Fifth Amendment. Holloway v. State, 695 S.W.2d 112, 119 (Tex. App.--Fort
Worth 1985), aff'd, 751 S.W.2d 866 (Tex. Crim. App. 1988). Point of error two is overruled.


Charge error.

The aggravated kidnapping indictment alleged that appellant:


with intent to inflict bodily injury on Shelby Mohundro and terrorize Brittney McAllister,
intentionally and knowingly abduct[ed] Shelby Mohundro by restricting the movements of
the said Shelby Mohundro without her liberty, by moving her from one place to another,
with the intent to prevent her liberation by using and threatening to use deadly force,
namely, to shoot the said Shelby Mohundro with a deadly weapon, to wit: a shotgun . . .
.



See Tex. Penal Code Ann. §§ 20.01(1), (2) (West 1994) (defining "restrain" and "abduct"). By comparing
the wording of the indictment to section 20.01(1), it is clear that a phrase was dropped before the word
"liberty" when the indictment was prepared, and that the indictment should have read that appellant
restricted the complainant's movements "without her consent, so as to interfere substantially with her liberty
. . . ." Appellant did not object to the wording of the indictment. See Tex. Code Crim. Proc. Ann. art.
1.14(b) (West Supp. 1998) (waiver of indictment defects). The State later moved to amend the indictment
to add the missing phrase. See Tex. Code Crim. Proc. Ann. art. 28.10 (West 1989) (amendment of
indictment). The motion was not granted and the indictment was not amended. See Ward v. State, 829
S.W.2d 787, 793 (Tex. Crim. App. 1992) (amendment requires physical alteration).

The district court's jury charge defined "restrain" in the language of section 20.01(1). The
court then applied the law to the facts to authorize appellant's conviction for aggravated kidnapping if the
jury found, in pertinent part, that appellant "restrict[ed] the movements of the said Shelby Mohundro,
without her consent, by moving her from one place to another, with the intent to prevent her liberation by
using or threatening to use deadly force, namely, to shoot the said Shelby Mohundro with a deadly weapon,
to wit: a shotgun." In point of error five, appellant complains that the charge incorporated the proposed
amendment to the indictment, varied from the actual indictment, and allowed his conviction on an unalleged
theory.

Appellant did not raise this objection below. At trial, appellant objected that the phrase
"with the intent to prevent her liberation by using or threatening to use deadly force, namely, to shoot the
said Shelby Mohundro with a deadly weapon, to wit: a shotgun" was not alleged in the indictment and
should not be included in the charge. This objection was plainly without merit and properly overruled. 
Absent a trial objection on the theory he now advances, appellant must demonstrate that the alleged charge
error was egregiously harmful. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion
on rehearing).

The jury charge must incorporate all elements of the offense as set forth in the controlling
penal statute, including those elements omitted from the indictment without objection. Fisher v. State, 887
S.W.2d 49, 55 (Tex. Crim. App. 1994). The indictment in this cause attempted to incorporate the
statutory definition of "restrain" in alleging the offense of aggravated kidnapping. In so doing, the indictment
omitted a portion of the definition. It was proper for the district court to include the omitted phrase in the
charge, so as to avoid reducing the State's burden of proof. Id. (2) Point of error five is overruled.


Punishment phase.

At the punishment phase, the district court submitted a special issue to the jury inquiring
whether appellant voluntarily released Shelby Mohundro alive and in a safe place. See Penal Code §
20.04(d). In accord with the statute, the court instructed the jury that appellant bore the burden of proof
on this issue by a preponderance of the evidence. Id. Prior to September 1, 1994, the burden of
persuasion on the safe release issue, which determines whether the offense is a first or second degree
felony, was on the State. See Williams v. State, 851 S.W.2d 282, 286 (Tex. Crim. App. 1993); Penal
Code, 63d Leg., R.S., ch. 399, sec. 1, § 20.04(b), 1973 Tex. Gen. Laws 883, 915 (Tex. Penal Code
Ann. § 20.04(b), since amended and renumbered). Appellant contends that section 20.04(d)
unconstitutionally shifts the burden of persuasion to the defendant. Appellant further argues that because
the burden of persuasion was on him, he should have been permitted to open and close jury argument at
the punishment phase of trial.

Even before September 1, 1994, the safe release issue was not an element of the offense
of aggravated kidnapping, but merely a punishment issue. Williams, 851 S.W.2d at 286; Robinson v.
State, 739 S.W.2d 795, 797 (Tex. Crim. App. 1987). In this sense, section 20.04(d) does not alter prior
law. Because safe release is not an element of the offense of aggravated kidnapping but merely a factor
that mitigates punishment, it does not violate due process or due course of law for section 20.04(d) to place
the burden of persuasion on the accused. See Patterson v. New York, 432 U.S. 197, 206-07 (1977);
Robinson v. State, 945 S.W.2d 336, 341-42 (Tex. App.--Austin 1997, pet. filed) (upholding
constitutionality of Tex. Penal Code Ann. § 19.02(d) (West 1994)). Point of error seven is overruled.

Finally, appellant contends that because he bore the burden of persuasion on the safe
release issue, he should have been permitted to open and close jury argument at the punishment phase. 
He cites no pertinent authority to support this contention. Given the undisputed evidence that appellant
released Shelby Mohundro only after a six-hour standoff with armed police, we are satisfied that if the court
erred by refusing to permit appellant to open and close argument, the error did not affect any substantial
right. Tex. R. App. P. 44.2(b). Point of error six is overruled.

The judgments of conviction are affirmed.



 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed on Both Causes

Filed: January 15, 1998

Do Not Publish
1. The amendment to section 20.04 subsequent to the offense is irrelevant to this appeal.
2. If there was an error in the application paragraph, it was that the court failed to expressly require a
finding that appellant interfered substantially with Shelby Mohundro's liberty. Appellant does not complain
of this omission. Had appellant challenged the sufficiency of the evidence, this Court would measure the
evidence by the elements of the offense as defined by a hypothetically correct jury charge. See Malik v.
State, No. 472-96 (Tex. Crim. App. Sep. 10, 1997). 



bjection below. At trial, appellant objected that the phrase
"with the intent to prevent her liberation by using or threatening to use deadly force, namely, to shoot the
said Shelby Mohundro with a deadly weapon, to wit: a shotgun" was not alleged in the indictment and
should not be included in the charge. This objection was plainly without merit and properly overruled. 
Absent a trial objection on the theory he now advances, appellant must demonstrate that the alleged charge
error was egregiously harmful. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion
on rehearing).

The jury charge must incorporate all elements of the offense as set forth in the controlling
penal statute, including those elements omitted from the indictment without objection. Fisher v. State, 887
S.W.2d 49, 55 (Tex. Crim. App. 1994). The indictment in this cause attempted to incorporate the
statutory definition of "restrain" in alleging the offense of aggravated kidnapping. In so doing, the indictment
omitted a portion of the definition. It was proper for the district court to include the omitted phrase in the
charge, so as to avoid reducing the State's burden of proof. Id. (2) Point of error five is overruled.


Punishment phase.

At the punishment phase, the district court submitted a special issue to the jury inquiring
whether appellant voluntarily released Shelby Mohundro alive and in a safe place. See Penal Code §
20.04(d). In accord with the statute, the court instructed the jury that appellant bore the burden of proof
on this issue by a preponderance of the evidence. Id. Prior to September 1, 1994, the burden of
persuasion on the safe release iss