In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00224-CR
______________________________


RANDY GRIDER, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 195th Judicial District Court
Dallas County, Texas
Trial Court No. F02-53572-IN


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â After a Dallas County jury rejected Randy Grider's claim of self-defense and found him guilty
of the first-degree felony offense of murdering Johnny Ray Cole, Grider testified during the
punishment phase of trial that he was defending himself from Cole, and that, when Cole quit
fighting, Grider also quit fighting and left the scene. The jury assessed Grider's punishment at
twenty-five Â years' Â imprisonment. Â Grider Â contends Â on Â appeal Â we Â should Â reverse Â for Â two
reasons: (1) notwithstanding Grider's failure to object to the jury charge which contained no
instruction concerning sudden passion, the trial court's failure to so charge the jury caused Grider
egregious harm; and (2) the evidence is legally and factually insufficientâand, in addition, the
factual sufficiency standard of review is incorrect. We affirm.
Jury Charge
Â Â Â Â Â Â Â Â Â Â Â Â In his first point of error, Grider argues that he suffered egregious harm from the trial court's
failure to instruct the jury on sudden passion. We disagree.
Â Â Â Â Â Â Â Â Â Â Â Â When on appeal the jury charge is asserted to contain error, we must first determine whether
such error exists. Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996); Garcia v. State, No.
05-03-00001-CR, 2004 Tex. App. LEXIS 4341, at *26 (Tex. App.âDallas May 13, 2004, pet. filed). 
If there is error, we are to perform one of two error analyses, depending on whether the error was
preserved. Hutch, 922 S.W.2d at 170; see also Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim.
App. 1986). If error was preserved, we are to reverse if "the error is not harmless." Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If, however, error is not
preserved, we are to reverse only if the error causes "egregious harm." Hutch, 922 S.W.2d at 171;
Almanza, 686 S.W.2d at 171; Garcia, 2004 Tex. App. LEXIS 4341, at *26.
Â Â Â Â Â Â Â Â Â Â Â Â At trial, Grider did not request an instruction on sudden passion and, in fact, said "no
objection" to the charge as submitted. Error


 was not preserved and, therefore, must have caused
egregious harm to be reversible.
Â Â Â Â Â Â Â Â Â Â Â Â Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go
to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his
defensive theory." Almanza, 686 S.W.2d at 172. To determine whether there was egregious harm,
we consider (1) the entire jury charge, (2) the evidence on contested issues and the weight of
probative evidence, (3) counsel's argument, and (4) any other relevant information in the record. 
Bailey v. State, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); Batiste v. State, 73 S.W.3d 402, 407
(Tex. App.âDallas 2002, no pet.). "Egregious harm is a difficult standard to prove and such a
determination must be done on a case-by-case basis." Hutch, 922 S.W.2d at 170; see Batiste, 73
S.W.3d at 407.
Â Â Â Â Â Â Â Â Â Â Â Â In this case, the jury charge for the guilt/innocence phase of trial included the defensive issue
of self-defense, which was the sole defensive issue and the primary focus of the defense at trial. 
Beyond the burden of proof arguments, only self-defense was mentioned by the defense at trialâin
voir dire, opening argument, and closing argument. In fact, in closing argument, Grider's counsel
said, "This whole case is about self-defense." During the punishment phase of trial, Grider's
testimony touched only on self-defense, not on sudden passion.
Â Â Â Â Â Â Â Â Â Â Â Â The bulk of the defense evidence attempted to establish self-defense. Grider's evidence
indicated that (1) Cole, the victim, had been pursuing Grider to repay money he had borrowed from
Cole, (2) Grider knew Cole normally carried a gun, (3) Cole initiated the fight resulting in Cole's
death by calling Grider over to Cole's car and then lashing out at Grider and cutting his arm with a
knife, (4) the two men then fought at close quarters in the front seat of Cole's car, (5) Grider was
defending himself during the fight, (6) when Cole quit fighting, Grider exited the car and left the
scene, and (7) Cole's loaded gun was found in Cole's car with him after the incident.



Â Â Â Â Â Â Â Â Â Â Â Â On the other hand, there is at least some evidence that tends to support the claim of sudden
passion. Grider's written statement to police, which is in evidence, indicated that, during the fight,
Grider went berserk. And there were over seventy cut or stab wounds on Cole's body. At one point
during trial, the State's attorney spoke of a "rage" killing.



Â Â Â Â Â Â Â Â Â Â Â Â From a more general review of the record, we find evidence suggesting various facts
providing context for the killing. Before the killing, Cole and Grider had an ongoing bad
relationship and "bad blood" between them, Grider had said to third parties that he would "get" or
"kill" Cole, and Grider had obtained a gun. At the time of the killing, both Cole and Grider were
intoxicated. Shortly after the killing, Grider said Cole "deserved to die," and Grider absconded to
California.
Â Â Â Â Â Â Â Â Â Â Â Â Jenkins v. State, 740 S.W.2d 435 (Tex. Crim. App. 1987), is similar to the case before us in
that they both involve asserted self-defense and a failure to preserve error in failure to instruct on
sudden passion. The Jenkins court determined, among other things, that based on the record and the
defense strategy of focusing on self-defense, there was no egregious harm from the failure to instruct
on sudden passion. Id. On facts analogous to those in the present case, the court found that sudden
passion was not raised by the evidence and seemed swayed by the defendant's focus on self-defense.
Â Â Â Â Â Â Â Â Â Â Â Â In Batiste, the court found no egregious harm in the trial court's failure to give a reasonable
doubt instruction for the jury's assessment of punishment after a guilty plea. In its analysis, the court
noted that reasonable doubt was not critical or central to the case, that the jury assessed punishment
"far below the maximum punishment available," and that failure to find egregious harm would not
invite the State to fail to request reasonable doubt instructions in the future. Batiste, 73 S.W.3d at
408. From the record before us, we conclude that the issue of sudden passion was not critical or
central to the case, that the jury assessed punishment "far below the maximum punishment
available," and that a failure to find egregious harm here will not endanger future
defendantsâbecause it is within a defendant's power to ask for an instruction on sudden passion
during the punishment phase of trial, if the issue is raised by the evidence. Those factors, too,
suggest there was no egregious harm here.
Â Â Â Â Â Â Â Â Â Â Â Â Ruiz v. State, 753 S.W.2d 681, 686 (Tex. Crim. App. 1988), focused on the charge and found
egregious harm. Ruiz, charged with murder, was able to present some evidence of sudden passion
arising from an adequate cause. Although the State had the burden to prove Ruiz's actions were not
the result of sudden passion arising from an adequate cause, the jury was not so instructed. In
Ruizâbefore the 1994 amendments when negating sudden passion was still an element of the State's
case for proving murderâthe court found egregious harm in the possibility that the jury was
confused and misled into ending its deliberations under the incorrect instruction on the law, because
the jury demonstrated, in its communication with the trial court, initially it seriously considered
sudden passion. In Ruiz, sudden passion went to the heart of the case and to the heart of the jury
deliberations. Id. at 684; see also Castillo-Fuentes v. State, 707 S.W.2d 559 (Tex. Crim. App.
1986). We note that, after the 1994 amendments to the Texas Penal Code, negating sudden passion
is not an element of the State's case for murder. Instead, sudden passion, if raised and proven by a
defendant, will lower the first-degree felony of murder to a second-degree felony. See Robinson v.
State, 945 S.W.2d 336, 342 (Tex. App.âAustin 1997, pet. ref'd).


 In the case before us, sudden
passion was not part of the State's case for murder and did not go to the heart of the case or to the
heart of jury deliberations.
Â Â Â Â Â Â Â Â Â Â Â Â On the same day the Almanza opinion was delivered, the Texas Court of Criminal Appeals
handed down Kucha v. State, 686 S.W.2d 154 (Tex. Crim. App. 1985). Kucha examined the "state
of the evidence" part of the Almanza analysis. In Kucha, the State sought to prove Kucha was a
habitual offender. The jury charge properly instructed the jury on the enhanced range of punishment
if it made a habitual-offender finding, but the charge failed to cover the alternative. Id. at 155. The
court found no egregious error.
The fact of the prior convictions was not a contested issue at all. Appellant's plea of
"not true" only put the State to its proof. Considering that the evidence of the prior
convictions was undisputed, uncontradicted, and seemed to have been taken almost
as a "given" by the parties, we hold that the failure of the court to charge on the range
of punishment if the enhancements were found to be untrue, was not so harmful that
it deprived appellant of a fair and impartial trial. If the evidence of the prior
conviction had not been so strong, or if appellant had contested it in some fashion,
this issue would not be so clearcut. But, from the record it appears that all parties,
including appellant, assumed the fact of the prior conviction and did not dispute its
truth. Also, the prior was proven beyond a reasonable doubt by the State. In light of
the record we hold that the error was not fundamental.
Id. at 156. As in Kucha, the trial court's failure to instruct the jury on Grider's current claim of
sudden passion did not relate to a "contested issue." See also Williams v. State, 851 S.W.2d 282, 289
(Tex. Crim. App. 1993) (no egregious harm where error related to incidental theory of defense).
Â Â Â Â Â Â Â Â Â Â Â Â This case has none of the elements found by the courts to support an egregious-harm finding. 
In this case, there was a defensive issue submitted and focused on by the defenseâself-defense. 
From Grider's perspective at trial, self-defense was central to the case. The issue of sudden passion
appears now, on appeal, as an afterthought, and was at most incidental to the main focus at trial. 
Therefore the lack of an instruction on sudden passion did not deny him a "fair and impartial trial,"
"go to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his
defensive theory." Almanza, 686 S.W.2d at 172.
Â Â Â Â Â Â Â Â Â Â Â Â We hold that the lack of an instruction on sudden passionâeven if it should have been
givenâdid not cause egregious harm to Grider, and thus overrule his first point of error.
Evidentiary Sufficiency
Â Â Â Â Â Â Â Â Â Â Â Â In his remaining points of error, Grider asserts the evidence is factually and legally
insufficient. He also argues that the standard by which we review the factual sufficiency of the
evidence is incorrect, because it incorporates "the traditional civil factual sufficiency standard." We
discuss those points together.
Â Â Â Â Â Â Â Â Â Â Â Â In criminal cases, we are bound to follow the standards for evidentiary sufficiency set by the
Texas Court of Criminal Appeals. Very recently, a reformulated standard for our review of the
factual sufficiency of the evidence was announced by the Texas Court of Criminal Appeals,
remarkably, using the same logic asserted by counsel for Grider.
The Texas Supreme Court recently dealt with the issue of a factual-sufficiency
review when the burden of proof at trial was higher than preponderance of the
evidence. In In re C.H., the court adopted a factual-sufficiency standard of review
for cases in which the burden of proof is clear and convincing evidence. The court
stated:
Â 
We conclude that the burden of proof at trial necessarily affects appellate review of the evidence. Under traditional factual sufficiency standards, a court
determines if a finding is so against the great weight and preponderance of the
evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. But that standard is inadequate when evidence is more than a
preponderance (more likely than not) but is not clear and convincing. As a
matter of logic, a finding that must be based on clear and convincing evidence
cannot be viewed on appeal the same as one that may be sustained on a mere
preponderance.
 In re C.H., 89 S.W.3d 17, 25, 45 Tex. Sup. Ct. J. 1000 (Tex. 2002) (citations
omitted). We agree with the Supreme Court that the burden of proof at trial dictates
the standard of appellate review.
Â 
We will attempt to resolve some of the confusion created by the standard that has
developed since Clewis by: 1) linking the burden of proof at trial to the standard of
review and 2) avoiding language suggestive of a preponderance-of-the-evidence
burden of proof. This does not alter the standards elucidated since Clewis, rather it
serves only to synthesize the ideas each decision has provided and to acknowledge
the necessity for appellate courts to consider the burden of proof at trial when
reviewing the factual sufficiency of the evidence. There is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. First, when
considered by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that
the beyond-a-reasonable-doubt standard could not have been met, so the guilty
verdict should not stand.
Zuniga Â v. Â State, Â No. Â 539-02, Â 2004 Â Tex. Â Crim. Â App. Â LEXIS Â 668, Â at Â *18â20 Â (Tex. Â Crim. App.
Apr. 21, 2004) (footnote omitted). Grider is correct to the extent that the factual-sufficiency review
should Â be Â different Â than Â the Â standard Â set Â out Â in Â the Â past. Â We Â are Â bound Â by Â and Â apply Â the
factual-sufficiency standard announced in Zuniga.
Â Â Â Â Â Â Â Â Â Â Â Â In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found Â the Â essential Â elements Â of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
Â Â Â Â Â Â Â Â Â Â Â Â When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga, 2004 Tex. Crim.
App. LEXIS 668, at *20. There are two ways in which we may find the evidence to be factually
insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to support
the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. 
Id. Second, ifâwhen we weigh the evidence supporting and contravening the convictionâwe
conclude that the contrary evidence is strong enough that the State could not have met its burden of
proof, we must find the evidence insufficient. Id. "Stated another way, evidence supporting guilt
can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable doubt
standard." Id. If the evidence is factually insufficient, then we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
Â Â Â Â Â Â Â Â Â Â Â Â Certainly this record contains evidence tending to support and to undermine a guilty verdict. 
The jury is entitled to believe certain evidence and to disbelieve other evidence. See Bustamante v.
State, 106 S.W.3d 738, 741 (Tex. Crim. App. 2003). The drunken Cole, in possession of a loaded
gun somewhere near him but not in his hand, from a sitting position in his car, lashed out at the
drunken Grider with a knife and cut him once on the arm. Grider "defended" by cutting or stabbing
Cole over seventy times. We conclude both that the evidence supporting the verdict, considered
alone, is strong enough to support the jury's finding of guilt beyond a reasonable doubt, and
thatâwhen we weigh the evidence supporting and contravening the convictionâthe contrary
evidence is not so strong that the State could not have met its burden of proof. From our review of
the record, referenced above and elsewhere in this opinion, we hold the evidence was both legally
and factually sufficient to support the judgment.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â May 7, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 8, 2004

Publish



adshaw]: Well, I mean, I decided to leave.

 [Defense Counsel]: Were you and she arguing at that time?

 [Bradshaw]: Yes, sir, we were.

 [Defense Counsel]: Did she ask you to leave?

 [Bradshaw]: She did.

 [Defense Counsel]: And did you get up and start to walk out?

 [Bradshaw]: I did.

 . . . .

 [Defense Counsel]: Did you then turn around and talk to her?

 [Bradshaw]: She said something to me as I was getting up.

 [Defense Counsel]: And what did she say?

 [Bradshaw]: I had asked her why she hadn't gone ahead and filed for divorce. You
know, I really couldn't understand that. I didn't understand what we were doing. 
And, I mean, I just expressed concern. I just couldn't understand why she hadn't --
why she hadn't filed.


 [Defense Counsel]: Was there any talk of her infidelity?

 [Bradshaw]: There was some talk of that.

 [Defense Counsel]: What is the next thing you remember happening?

 [Bradshaw]: I asked her if she had had any improper relationships with any men
that she had worked with.


 [Defense Counsel]: Did she deny that?

 [Bradshaw]: No, sir. She told me that she did.

 [Defense Counsel]: And did that make you angry?

 [Bradshaw]: It did. It did.

 [Defense Counsel]: What happened next?

 [Bradshaw]: I lunged at her. I lunged at her.

 [Defense Counsel]: Did you hit her?

 [Bradshaw]: I'm sure I did. I don't remember striking her. I remember lunging at
her.


 [Defense Counsel]: Okay what is the next memory you have?

 [Bradshaw]: I remember my motion light coming on at my house. I remember --
I remember staring at my console light in my truck, my dash lights for a moment. I
remember seeing myself covered in blood.

The record contains only circumstantial evidence negating sudden passion. The evidence in the
record showed Bradshaw had previously been physically violent with Toy as well as with a previous
wife. The jury also heard evidence that Bradshaw had been a controlling spouse. Further, the jury
heard the 9-1-1 call wherein Bradshaw calmly admitted to stabbing his wife. 

 Examining the entire record, we are unable to conclude that sudden passion is established
as a matter of law. The only other witness to the confrontation, Toy Bradshaw, is dead. "The jury
was free to make its own determination of appellant's credibility and reject appellant's version of
events if it did not believe he was telling the truth." Trevino, 157 S.W.3d at 822.

 Further, the jury could have concluded Bradshaw's actions did not arise from an adequate
cause, even if it believed Bradshaw's version of the events. The jury could have concluded that
telling an estranged spouse about an extramarital relationship would not commonly produce in a
person of ordinary temper a degree of anger, rage, resentment, or terror sufficient to render the mind
incapable of cool reflection. One would think that husbands and wives of ordinary temper, whether
or not living together at the time, could discover a spouse's infidelity without murdering their spouse. 
The evidence is legally sufficient.

 The evidence is also factually sufficient. The jury was presented with considerable evidence
of prior domestic abuse by Bradshaw. On one occasion, Bradshaw knocked out several of Toy's
teeth. In addition, the jury was presented with evidence of Bradshaw's controlling and violent nature. 
The jury's conclusion Bradshaw was not under the influence of sudden passion arising from an
adequate cause is not clearly wrong or manifestly unjust. The evidence is legally and factually
sufficient.





 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 10, 2007

Date Decided: December 3, 2007


Publish

1. Toy Bradshaw will be referred to by her first name; Joe Bradshaw will be called by
Bradshaw.
2. In his second and third points of error, Bradshaw argues the unanimity requirement has its
origin in the Texas Constitution and the Due Process Clause of the Fourteenth Amendment. 
Bradshaw cites Molandes v. State, 571 S.W.2d 3, 4 (Tex. Crim. App. 1978), for the proposition that
the Texas Constitution requires the charge on sudden passion to be unanimous. See Tex. Const.
art. V, § 13; see also Sanchez v. State, 23 S.W.3d 30, 41 (Tex. Crim. App. 2000) (Keller, J.,
concurring). Bradshaw argues Texas has guaranteed a "structural protection," i.e., a unanimous
verdict, and there is a violation of the Due Process Clause of the Fourteenth Amendment if the State
fails to meaningfully vindicate that right. Bradshaw cites Evitts v. Lucey, 469 U.S. 387 (1985), as
authority for this proposition. Because the unanimity requirement is well established under the
Texas Code of Criminal Procedure, it is not necessary for us to decide whether the Texas
Constitution or the United States Constitution requires the verdict to be unanimous. 
3. Bradshaw argues that none of the forty-two questions asked of Whitten qualify as hearsay
and claims that Whitten's notes qualify as statements for medical diagnosis or treatment--an
exception to the hearsay rule. See Tex. R. Evid. 803(4). The State argues that everything contained
in the notes constitutes hearsay and that all of the statements are out-of-court statements made for
the truth of the matter asserted. Neither side briefed each question or statement individually. The
statements made by Bradshaw to Whitten would constitute hearsay, but may be admissible under a
hearsay exception. While some of Whitten's testimony and notes may have been hearsay, portions
of Whitten's testimony were clearly not hearsay. Whitten testified about the frequency of the
counseling sessions, the goals of the counseling, and his advice to Bradshaw. Hearsay objections
must be raised in relation to a specific question. The mere fact that a witness could be asked about
hearsay statements does not justify the exclusion of the entirety of the witness' testimony. Because
the trial court excluded Whitten's testimony in its entirety, it is not necessary for us to determine
whether Whitten's testimony concerning statements made by Bradshaw were admissible under a
hearsay exception or whether the notes were admissible under an exception to the hearsay rule. 
4. Although Whitten was called as a witness during the guilt/innocence phase of trial, Whitten's
testimony, if it had been admitted, could have also been considered during the punishment phase. 
On appeal, Bradshaw argues the error in excluding Whitten's testimony resulted in harm during both
phases of trial.
5. Bradshaw's counsel denied Whitten was being called as an expert witness at trial. 
Bradshaw's trial counsel stated, "[u]nder the LPC Act it specifically states that a counselor offering
counseling can be called as a witness for facts or information regarding a therapeutic client. He
cannot testify as an expert."